[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 9825
The plaintiffs, Michael J. Donnelly and Mary K. Donnelly (hereinafter "plaintiffs"), have appealed decision of the defendant, the Town Plan 
Zoning Commission of the Town of West Hartford (hereafter "commission") granting an application of the defendant, Paul K. Butler, (hereafter "Butler") to resubdivide property owned by Butler known as 515 Mountain Road in the Town of West Hartford into two residential building lots. The original subdivision approval was for Lot 5D, and the applications were for a resubdivision into two lots to be known as Lot 5D-1 and 5D-2, and for a special use permit for two rear lots being the same two lots resulting from the resubdivision. The proposed resubdivision and special use permit apply to land of Butler which abuts the plaintiffs' property located at 505 Mountain Road. The parties filed briefs, and argument was heard by this Court on August 16, 2000.
PROCEDURAL AND FACTUAL HISTORY
At all times relevant hereto the plaintiffs were and are the owners of property known as 505 Mountain Road in the Town of West Hartford located on the westerly side of said road. At all times relevant hereto Butler was and is the owner of property immediately abutting and westerly of 505 Mountain Road with said property of Butler known as 515 Mountain Road. On or about August 20, 1999 Butler filed an application for a special use permit approval for two rear lots in connection with a proposed two lot resubdivision of 515 Mountain Road, and at the same time and date filed an application for a resubdivision of said premises of Butler known as 515 Mountain Road into two lots from the original existing Lot 5D. The new lots would be 5D-1 and 5D-2. These would be residential building lots. Plaintiffs' property at 505 Mountain Road is also their residence. Notice of the public hearings on both applications were published in the West Hartford News on October 21, 1999 and October 28, 1999 for a public hearing on the applications to be held on November 3, 1999.[1]
Hearings were in fact held on November 3, 1999 with respect to both applications. Butler presented evidence in favor of both applications and several neighboring property owners spoke, some in favor of and some in opposition to the applications. That same evening following the hearing both applications were approved by the commission. Plaintiffs have appealed both approvals by the commission making essentially two claims. The first is that the public pre-hearing notices on October 21, 1999 and October 28, 1999 aforementioned contained an incomplete and inadequate reference to the location of the activities proposed in the CT Page 9826 applications. The second claim is that the defendant commission acted illegally in approving a resubdivision containing a lot, namely Lot 5D-2, without street frontage in violation of the subdivision regulations of the Town of West Hartford.
AGGRIEVEMENT
Aggrievement is a jurisdictional matter and a prerequisite for maintaining an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 307, 592 A.2d 953 (1991). "The question of aggrievement is essentially one of standing." (Citation omitted.)DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369, 373,573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, the Court must dismiss the appeal. Id. General Statutes § 8-8 (a) defines an "aggrieved person" as "any person owning land that abuts or is within the radius of one hundred feet of any portion of the land involved in the decision of the board."
During the Court hearing of August 16, 2000 the parties stipulated that the plaintiffs, at all times relevant hereto, were and are abutting property owners to the property of Butler which is the subject of both applications, in particular that the plaintiffs were abutting property owners as aforesaid at the time of the application and at the time of the public hearings and the approvals. Further, there is on file in the ROR-DR39 an A-2 survey which shows the plaintiffs to be abutting property owners to the subject property owned by Butler. Accordingly, the Court finds that the plaintiffs are statutorily aggrieved.
STANDARD OF REVIEW
A trial Court may grant relief in an appeal from a decision of an administrative authority only where the authority has acted unreasonably, illegally, arbitrarily or has abused its discretion. Smithv. Zoning Board of Appeals 227 Conn. 71, 80, 629 A.2d 1089 (1993). The Court, however, "may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers . . . ." (Internal quotation marks omitted.)Frito-Lay. Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73,538 A.2d 1039 (1988). The Court simply determines whether the record reasonably supports the conclusions reached by the agency. DeBeradinisv. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220 (1994)
"The burden of proof is on the plaintiff to demonstrate that the board acted improperly." Spero v. Zoning Board of Appeals, 217 Conn. 435, 440,586 A.2d 590 (1991) CT Page 9827
In reviewing a subdivision application, the commission acts in an administrative capacity and not as a legislative, judicial or quasi-judicial agency. Reed v. Planning Zoning Commission, 208 Conn. 431,433, 544 A.2d 1213 (1988) The commission, therefore, "has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Id. "If [the subdivision plan] does not conform as required, the plan may be disapproved." Forest ConstructionCo. v. Planning Zoning Commission, 155 Conn. 669, 675, 236 A.2d 917
(1967).
The commission's action is to be sustained if any one of the reasons stated is sufficient to support its decision. See Property Group, Inc.v. Planning Zoning Commission, 226 Conn. 684, 697, 628 A.2d 1277
(1993). Where the commission has not stated the reasons for its decision, the court must review the record to determine whether the decision is supported thereby. A.P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, 186, 355 A.2d 91 (1974).
ISSUES
1. WERE THE PREHEARING NOTICES PUBLISHED IN THE WESTHARTFORD NEWS INCOMPLETE AND INADEQUATE?
The requirements for notice are contained in CGS Section 8-3c(b) as to a special permit application and CGS Section 8-26 with respect to a resubdivision application. The purpose of the statutory public prehearing notice is to fairly and sufficiently apprise the public of the proposed action so as to enable intelligent preparation for participation in the hearing. Cocivi v. Plan Zoning Commission, 20 Conn. App. 705, 708
(1990). "Compliance with prescribed notice requirements is a prerequisite to a valid action by a zoning board of appeals, and failure to give proper notice constitutes a jurisdictional defect." Nazarko v. ZoningCommission, 50 Conn. App. 517, 519 (1998). "There is no requirement that the published notice described the proposed action in detail or with exactitude." Id. 519. "The burden of proving that the notice was defective rests on the persons asserting its insufficiency." Id. 520. "Although the notice may not be misleading, it need not be exact. . . and a public filing of the plan is relevant to the determination of the adequacy of the notice." R.B. Kent Son. Inc. v. Planning Commission,21 Conn. App. 370, 378 (1990). Emphasis added. Whether the notice is adequate is a fact bound determination. "To the extent that the trial Court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous... This Court cannot retry the facts..." Nazarko v. Zoning Commission, supra, 518-19.
The notices of which plaintiffs complain are as follows: CT Page 9828
 "515 Mountain Road — Application (SUP#882) of Paul Butler, R.O. requesting approval of a Special Use Permit to authorize an additional rear lot to be created by the resubdivision of Lot 5D of the 515 Mountain Road Subdivision. The proposed lot will be located at the rear of 493 and 505 Mountain Road. (Submitted for TPZ receipt on September 1, 1999. Required TPZ public hearing scheduled for October 4, 1999; hearing rescheduled for November 3, 1999). R-40 ZONE.
 515 Mountain Road — Application (SUB#259) of Paul Butler, R.O. requesting approval of a resubdivision of Lot 5D of the 515 Mountain Road Subdivision. Lot 5D is a proposed to be resubdivided into two (2) lots. Resubdivided Lot 5D-1 would contain 1.47 acres and Lot 5D-2 would contain 1.4 acres. Both Lots would be provided access to Mountain Road over a private drive located north of the previously approved access point. (Submitted for TPZ receipt on September 1, 1999. Required TPZ public hearing scheduled for October 4, 1999; hearing rescheduled for November 3, 1999). R-40 ZONE"
Plaintiffs make the following claims as to the inadequacy of the notices:
1. The street address of the property is listed as 515 Mountain Road and makes no reference to 499 Mountain Road the parcel over which the MDC water service, sewer lines and utilities will be brought to the property which is the subject of the application, namely Lot 5D-2. The Court finds that failure to mention 499 Mountain Road in the notices does not make them inadequate. The proposed easement as shown on the resubdivision map, ROR-DR39, is not on the property of Butler which is the subject of the application. The easement for utilities was to be obtained from the owners of 499 Mountain Road because it is over their property. The property subject of the application is the Butler property as shown on the map being proposed Lots 5D-2 and 5D-1, and since the easement is not part of the Butler property, itis irrelevant as to concerns any opponents might have had.
Counsel for plaintiffs at the Court hearing indicated that his primary concern was the failure to mention 499 Mountain Road. However, since his brief contains two other points, the Court will address them.
2. Plaintiffs claim that the notice states that the property to be CT Page 9829 resubdivided is located in the "R-40" zone and does not indicate that the proposed Lot 5D-1 and the strip which provides access to both proposed lots are located in the "R-13" zone. According to the map, ROR DR39, the westerly/easterly boundary of the R-40 and R-13 zones is located on the plaintiffs' property which would mean that the proposed Lot 5D-1 is in an R-40 zone. The only portion of Butler's 5D-1 lot that is in an R-13 zone is the easterly portion of the strip approximately 60 feet wide the easterly end of which is adjacent to Mountain Road which strip provides access to both Lots 5D-1 and 5D-2. Therefore, the area being subdivided is primarily in an R-40 zone, and the fact that this small strip, which is not even the complete driveway, is in an R-13 zone is irrelevant. Further, both proposed lots, 5D-1 and 5D-2, comply with the area requirement of an R-13 zone which is 12,750 square feet and the area of an R-40 zone which is 40,000 square feet, Lot 5D-1 being 69,963 square feet and Lot 5D-2 being 60,965 square feet. The Court cannot think of any reason why this alleged disparity between the notice and the zones could be of any benefit to anyone opposing the applications.
3. The third claim of the plaintiffs is that the notice provides that Butler is requesting approval of a resubdivision of Lot 5D of the 515 Mountain Road subdivision into two lots, one containing 1.47 acres and one containing 1.4 acres, for a total of 2.87 acres when in fact the actual area of the two lots is 3.006 acres. The map aforementioned does show Lot 5D-1 as containing 1.606 acres. The difference between the amount of acreage in the notice and that shown on the map is .136 acres, and the Court cannot find that this slight discrepancy would in any way benefit those who would oppose the applications. If anything, the fact that there is slightly more acreage would benefit Butler in his applications. Plaintiffs further claim that the notice makes no mention of the lot line adjustment moving the southerly line of Lot 5D of the original Mountain Road subdivision 120 feet to the south. The Court raised this at the court hearing of August 16, 2000 and was told by counsel for the commission, without any objection from plaintiffs' counsel, that this had happened before this application and was not part of the record of this case. In any event, the Court finds no reason that such fact had to be mentioned in the notice.
Although the resubdivision map (ROR DR39) was filed on October 26, 1999 and, therefore, was not available at the time of the publication of the first notice on October 21, 1999, it was available at the time of the publication of the second notice on October 28, 1999. Further, on file with the Planning Zoning Division was ROR-DR40 which is a resubdivision map filed on September 29, 1999, and, therefore, was available at the time of the publication of the first notice. The Court has compared the two maps and cannot find anything materially different that would affect any possible opponents of the applications in their preparation for the CT Page 9830 hearing. Accordingly, these maps were available as aforementioned at the Planning and Zoning Division of the Town of West Hartford. Based upon the ruling in R.B. Kent Son, Inc. v. Planning Commission, supra, the Court finds that these plans being available is relevant to the determination of the adequacy of the notice. Anyone interested could easily have gone to the West Hartford Town Hall to view copies or the original of these maps.
Therefore, this Court finds that the notices of which plaintiffs complain do fairly and sufficiently apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing. The notices are adequate per CGS Sections 8-3 and 8-26. Counsel for plaintiffs stated at the hearing before this Court that the plaintiffs did not question the validity of the granting of the special use permit but only the alleged inadequacy of the notices.
2. DID THE COMMISSION ACT ILLEGALLY IN APPROVING A RESUBDIVISIONCONTAINING A LOT ALLEGEDLY WITHOUT STREET FRONTAGE?
This question is more complex than the issue of the public notice aforementioned because it involves the interpretation of the West Hartford Zoning Regulations and the West Hartford Subdivision Regulations. The zoning regulations are adopted by the West Hartford Town Council. The West Hartford Subdivision Regulations are adopted by the Plan Zoning Commission. West Hartford's Plan Zoning Commission is a combined commission for planning and zoning which has the same membership.
The issue here is whether or not the approval of the resubdivision was illegal, not necessarily whether the commission abused its discretion by being arbitrary or capricious. The question is whether or not the action of the commission in approving the resubdivision was illegal.
Plaintiffs concede that Lot 5D-1 which property extends in the form of a strip of land narrow in scope to Mountain Road does front on a street, namely Mountain Road, and the approval of that lot was not illegal. The question then arises whether the driveway which gives access by driveway to Mountain Road for the benefit of Lot 5D-2 means that Lot 5D-2 fronts on a street, namely, Mountain Road. Plaintiffs claim that frontage is required by the subdivision regulations, specifically Section A184-28A which reads as follows:
"Each subdivision lot must front on an approved street at least fifty (50) feet in width (unless it fronts on a Connecticut Department of Transportation marginal CT Page 9831 access street), whether the street is private or public."
Plaintiffs interpret that section to mean that front on an approved street means that the clear intent of the regulations is to ensure that all lots in a subdivision are served by a direct access to a public street 50 feet in width, and plaintiff requests that the Court interpret the aforementioned regulation as meaning direct access which presumably would mean adjacent to an approved street, namely, Mountain Road. Defendants claim that that would be a judicial interpretation imposed on the regulations that is not warranted by any definition in the subdivision regulations. Front is not defined nor is direct access defined, and obviously, direct access is not in the actual language of the aforementioned regulation.
However, the defendants claim that CGS 8-26 and Section A184-8 of the subdivision regulations explicitly require subdivisions to meet the zoning regulations of the Town of West Hartford. The West Hartford Code of Ordinances (zoning) Section 177-22 expressly provides inter-alia that:
 "In the case of a rear lot which is serviced by a private driveway providing access to the street, the minimum frontage requirement shall be reduced to the minimum required driveway width for that rear lot, measured at the point where the driveway crosses into the buildable portion of the rear lot, but the lot line along which frontage is measured must also continue, in an uninterrupted straight line, for such further distance as is necessary to provide a total lot line length of forty feet." Emphasis added.
CGS Section 8-26 provides as follows:
 "Approval of subdivision and resubdivision plans. Waiver of certain regulation requirements. Applications involving inland, wetlands, and water courses. . . . provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations." Emphasis added.
The resubdivision map, ROR DR-39, shows an eighteen foot wide driveway extending from the northerly property line of Lot 5D-2 traveling in a northwesterly direction until it reaches the southerly property line of CT Page 9832 Lot 5D-1 where it runs into a twenty-four foot wide driveway easement in favor of Lot 5D-2 which twenty-four foot wide driveway runs in an easterly direction to Mountain Road. The lot line along which frontage of the driveway onto Lot 5D-2 is shown as 258.95 feet, far in excess of the minimum requirement of forty feet. The driveway conforms to the minimum required driveway and, therefore, this driveway which gives access to Mountain Road from Lot 5D-2 does comply with West Hartford Zoning Ordinance Sec. 177-22. As for plaintiffs' claim that the word front should be taken by its dictionary meaning, the plaintiffs have not offered a definition from a specific dictionary. The Court has reviewed the definition of the word front as it appears in Webster's Ninth New Collegiate Dictionary. The applicable definition is "to face toward the _______ (the house fronts the street)". This definition neither indicates that the road or driveway must be adjacent to the street as long as it fronts the street; nor does it necessarily mean providing direct access to the street. In this case the driveway aforementioned does provide direct access onto the street. It may be a reasonable interpretation notwithstanding no dictionary authority that "front on an approved street" may mean to be adjacent to the street and that the intent of the regulation is to ensure that all lots in the subdivision are served by a direct access to a public street 50 feet in width as the plaintiffs claim. However, the Court is not willing to accept this interpretation finding that the plaintiffs have not proven their interpretation by a preponderance of the evidence. Further, there is no definition of the words "front" or "frontage" in the subdivision regulations.
However, assuming arguendo that the Court is willing to accept those definitions, the Court still cannot grant relief to the plaintiffs. As aforementioned the subdivision regulations and CGS Section 8-26 both require resubdivisions to meet the zoning regulations of the town. Therefore, the subdivision regulations are subservient to West Hartford Zoning Ordinance Section 177-22. The Court has already found that Lot 5D-2 complies with the rear lot requirements of Section 177-22. Based upon the specific language in Section 8-26 and the subdivision regulations requiring resubdivisions to meet the zoning regulations, this Court finds that the zoning regulations must prevail over the subdivision regulations. This is based upon the plain language of CGS Sec. 8-26 and the subdivision regulations. Therefore, there is no need to have a declaratory judgment to declare the subdivision regulation A184-28A invalid. It is not invalid in general. It is just in conflict with the zoning regulations in certain cases including the circumstances of the case at bar.
Additionally, the commission which is a planning and zoning commission exercises its zoning functions pursuant to the zoning regulations and its planning functions pursuant to CGS Section 8-26. Even if there were CT Page 9833 separate commissions, one for planning and one for zoning, the language in Krawski v. Planning Zoning Commission, 21 Conn. App. 667, 670, (1990), would apply in this case, which language states, ". . . coordination between the [planning and zoning] functions is desirable and beneficial to the municipality". Krawski, supra, also held that the commission even though the defendant planning and zoning commission was sitting as a planning commission, "it is empowered to consider applicable town zoning regulations in reviewing a subdivision application". Id. 670. As in Krawski, supra, here the town subdivision regulations incorporate zoning regulations by reference as the Court has described above. The Court stated: "We conclude that the trial court erred in holding that town zoning regulations may not be the basis for subdivision planning decisions." Id. 670.
Further, it is well settled law that the commission, as the drafter of the town's subdivision regulations, is in the best position to interpret what those regulations mean.
In addition, the defendant commission cites Section A184-9 of the subdivision regulations which reads as follows:
 "Where strict conformity to these subdivision regulations would cause undue hardship or injustice to the tract owner, a subdivision plan substantially in conformity with the regulations may be approved by the Commission, provided that the spirit of the regulations and public convenience and welfare are not adversely affected and that such subdivision plan receives approval of at least four (4) of the Commissioners."
The commission approved the resubdivision application by a vote of 5 — 0. Such approval of the application is in effect a finding that Section A184-9 does apply in this case and that the findings required in that section have been made. See Gardiner v. Conservation Commission,222 Conn. 98, 109-11 (1992). Further, "Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Gulf Oil Corporation v. Board of Selectman, 144 Conn. 61, 66
(1956). "This cautionary advice is especially apt whenever the Court is reviewing a decision of a local commission composed of lay persons."Gagnon v. Inland Wetlands Water Courses Commission, 213 Conn. 604, 611
(1990).
For the reasons stated above and from the totality of the evidence, this Court cannot find that the defendant commission, in approving the CT Page 9834 applications, acted illegally,[2] arbitrarily, capriciously or in abuse of its discretion.
The appeal is dismissed.